{¶ 27} The majority's decision in this case financially rewards a company that the trial court found to have purposefully committed fraud on another company in order to induce the latter into the execution of a contract. As I believe that such a result violates public policy and sets a dangerous precedent, I must respectfully dissent.
 {¶ 28} In effect, the majority excuses Appellant's fraudulent activities because the resulting contract contained more favorable monetary terms than Appellee's arrangement with the City. The majority's reliance on monetary damages, however, is misplaced. There is no authority for the majority's position that the injury component of fraudulent inducement must be monetary damages. The trial court concluded as follows:
"[Appellee's] injury is the inconvenience of multiple waste receptacles upon their limited physical space, the time and resources devoted to the removal of the same, and the claims for money damages made by [Appellant]."
 {¶ 29} The majority ignores, however, the fact that, upon signing the contract with the Appellant, Appellee was bound by its terms for three years. By contrast, the previous agreement with the City, involved service on a month-to-month basis, and under its terms, the Appellee was free to change its service at any time without a penalty. Based upon the record before this Court, there is no question that Appellee suffered injury as a result of Appellant's fraud.
 {¶ 30} Further, the majority discounts the injury that Appellee suffered by being sued by Appellant as a result of the actions herein. To state that Appellee would not have suffered this injury if it had not chosen to cancel the contract ignores the very premise of Appellee's defense. From the outset, Appellee has maintained that the entire contract was void due to fraud in the inducement. To state that the liquidated damages Appellant seeks are somehow disconnected from Appellee's reliance ignores the clear causal connection presented by the facts. But for
Appellant's fraudulent misrepresentations, Appellee would not have been subject to the contract or its liquidated damages provision.
 {¶ 31} Even under the majority's requirement of a showing of monetary damages, the cost of defending the underlying legal action is a monetary damage resulting directly from Appellant's fraud. While the majority concludes that Appellee has brought these damages upon itself, I respectfully disagree. To hold as the majority does, this Court would require Appellee to remain in a contractual relationship that was initiated through deceit by Appellant and would punish Appellee for attempting to extricate itself from any business relationship with a company in whom it justifiably had no confidence. I find such a position to be untenable. In the instant matter, not only is Appellant not punished for its fraudulent actions, the majority rewards it, permitting Appellant to recover six-months of fees because of Appellee's refusal to abide by terms of a fraudulently procured contract. Sound public policy cannot permit such a result.
 {¶ 32} Based upon the evidence presented below, the trial court found Appellee's witnesses to be credible and found that Appellant had misrepresented material facts in order to entice Appellee to enter a contract. As the trial court is better situated to make credibility determinations, I cannot say that the court lost its way in its conclusions. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. As Appellee established each of the elements of fraudulent inducement by the appropriate standard of proof, I would affirm the trial court's decision and deny any relief sought by Appellant.